Jonathan O. Hafen (6096) (jhafen@parrbrown.com)
Jeffery A. Balls (12437) (jballs@parrbrown.com)
Michael S. Lehr (16496) (mlehr@parrbrown.com)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750

*Attorneys for Court-Appointed Receiver Wayne Klein*

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>　　　　　Plaintiff,<br>　v.<br><br>JP MORGAN CHASE BANK, National Association,<br><br>　　　　　Defendant. | **COMPLAINT**<br><br>**(Ancillary to Case No. 2:15-cv-00828)**<br>**(General Order 19-003)**<br><br>Civil No. _____<br><br>Judge David Nuffer |

R. Wayne Klein, the Court-Appointed Receiver of RaPower-3, LLC ("RaPower"), International Automated Systems Inc. ("IAS"), LTB1 LLC ("LTB1"), their subsidiaries and affiliates,[1] and the assets of Neldon Johnson ("Johnson") and R. Gregory Shepard ("Shepard"),[2] (the "Receiver" or "Plaintiff")  in the case styled as *United States v. RaPower-3, LLC, et al.*,

---

[1] Collectively, unless stated otherwise, RaPower, IAS, LTB1, and all subsidiaries and affiliated entities are referred to herein as "Receivership Entities." The subsidiaries and affiliated entities are: Solco I, LLC ("Solco"); XSun Energy, LLC ("XSun"); Cobblestone Centre, LC ("Cobblestone"); LTB O&M, LLC; U-Check, Inc.; DCL16BLT, Inc.; DCL-16A, Inc.; N.P. Johnson Family Limited Partnership ("NPJFLP"); Solstice Enterprises, Inc. ("Solstice"); Black Night Enterprises, Inc. ("Black Night"); Starlite Holdings, Inc. ("Starlite"); Shepard Energy; and Shepard Global, Inc ("Shepard Global").
[2] Collectively, RaPower, IAS, LTB1, Shepard, and Johnson are referred to herein as "Receivership Defendants."

Case No. 2:15-cv-00828 (D. Utah) (Nuffer, J.) (the "Civil Enforcement Case"), hereby files this Complaint against JP Morgan Chase Bank, NA ("Chase").

## STATEMENT OF THE CASE

1. Receivership Defendants were operated as an abusive tax fraud.[3] The United States alleged, and the Court found, among other things, that the Receivership Defendants operated a massive tax fraud.[4] The whole purpose of the Receivership Entities was to enable funding for Neldon Johnson and his family.[5] Chase received funds from Receivership Defendants that benefitted persons other than the Receivership Defendants. The Receiver seeks to recover, for the benefit of the Receivership Estate, the amounts improperly transferred to Chase.

## PARTIES, JURISDICTION AND VENUE

2. Pursuant to a Receivership Order entered on October 31, 2018 in the Civil Enforcement Case (the "Receivership Order"),[6] Plaintiff is the duly-appointed Receiver for Receivership Entities.[7]

3. Upon information and belief, Chase is a national bank that conducts business in the State of Utah.

---

[3] *See Findings of Fact and Conclusions of Law*, Civil Enforcement Case, Docket No. 467, at 1 ("FFCL"), filed Oct. 4, 2018.
[4] *Amended and Restated Judgment*, Civil Enforcement Case, Docket No. 507, filed Nov. 13, 2018; *see also* FFCL. The Receivership Defendants have filed notices of appeal, which are pending.
[5] FFCL at 128.
[6] Civil Enforcement Case, Docket No. 490. A Corrected Receivership Order, which corrected formatting errors, was entered the next day, Docket No. 491.
[7] Civil Enforcement Case, Docket No. 636. The assets of 12 of these affiliates had been frozen by the initial Receivership Order.

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1367, 754.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 754, 1391(b).

## FACTS
## The Abusive Tax Scheme

6. As the Court found in the Civil Enforcement Case: "For more than ten years, the Receivership Defendants promoted an abusive tax scheme centered on purported solar energy technology featuring 'solar lenses' to customers across the United States. But the solar lenses were only the cover story for what the Receivership Defendants were really selling: unlawful tax deductions and credits."[8]

7. Receivership Defendants sold solar lenses emphasizing their purported tax benefits. Customers were told that they could "zero out" their federal income tax liability by buying enough solar lenses and claiming both a depreciation deduction and solar energy tax credit for the lenses.

8. The purported solar energy technology and solar lenses, however, did not work and could not generate energy.

9. Specifically, the Court found that the "purported solar energy technology is not now, has never been, and never will be a commercial grade solar energy system that converts sunlight into electrical power or other useful energy" and "[t]he solar lenses do not, either on

---

[8] *Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership*, Civil Enforcement Case, Docket No. 636 at 4, quoting FFCL at 1.

their own on in conjunction with other components, use solar energy to generate marketable electricity."[9]

10. Notwithstanding the fact the solar lenses and technology never worked, Receivership Defendants continued to sell solar lenses to customers emphasizing that customers would qualify for depreciation deductions and/or the solar energy tax credit.

11. Between 45,205 and 49,415 solar lenses were sold to customers.[10] Receivership Defendants' own transaction documents and testimony at trial showed that the gross receipts received by Receivership Defendants were at least $32,796,196 and possibly much more.[11]

12. These lens sales constituted a massive tax fraud.[12] None of these solar lenses ever met the necessary elements to qualify for depreciation deductions or the solar energy tax credit.

13. Indeed, "[h]undreds, if not thousands" of customer lenses were not even removed from the shipping pallets.[13]

14. Based on these facts and others, the Receivership Defendants were enjoined from promoting their abusive solar energy scheme, were ordered to disgorge their gross receipts, and were required to turn over their assets and business operations to the Receiver.[14]

15. The Court held that the "whole purpose of . . . the Receivership Entities . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities

---

[9] FFCL at 49.
[10] *Id*. at 14.
[11] *Id*. at 15.
[12] *Id*.
[13] *Id*. at 55-56.
[14] *Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership*, Civil Enforcement Case, Docket No. 636 at 4, citing *Memorandum Decision and Order Freezing Assets and to Appoint a Receiver*, Civil Enforcement Case, Docket No. 444, filed August 22, 2018.

Johnson created, controls, and owns . . . . Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[15]

## Amounts Transferred to Chase

16. Upon information and belief, funds from Receivership Defendants, in at least the amount of $446,952.98, were transferred to Chase relating to outstanding balances on credit cards issued by Chase (all transfers to Chase, including additional transfers that may be found through discovery or otherwise, are referred herein as the "Transfers"). These payments to Chase were for credit card accounts in the name of Glenda Johnson, the wife of Neldon Johnson. A document summarizing the $446,952.98 in Transfers to Chase for the benefit of Glenda Johnson is attached hereto as Exhibit A.

## FIRST CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(a) and 25-6-303)*

17. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

18. The Receivership Entities were engaged in an enterprise with all of the characteristics of a fraud scheme.

19. The Receivership Entities made the Transfers to Chase in furtherance of the fraud scheme.

20. At all relevant times hereto, the Receivership Entities had at least one creditor.

---

[15] *Id.* citing FFCL and *Receiver's Report and Recommendation on Inclusion of Affiliates and Subsidiaries in Receivership Estate*, Civil Enforcement Case, Docket No. 581.

21. At all relevant times hereto, the Receivership Entities were insolvent.

22. The Transfers were paid to Chase with actual intent to hinder, delay or defraud a creditor of the Receivership Entities.

23. Pursuant to Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(a) and 25-6-303, the Receiver may avoid and recover the Transfers paid to Chase.

## SECOND CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(b) and 25-6-303)*

24. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

25. The Receivership Entities were engaged in an enterprise with all of the characteristics of a fraud scheme.

26. The Receivership Entities made the Transfers to Chase furtherance of the fraud scheme.

27. At all relevant times hereto, the Receivership Entities had at least one creditor.

28. The Transfers were paid by the Receivership Entities without receiving reasonably equivalent value in exchange for the Transfers.

29. At the time the Transfers were paid, the Receivership Entities (a) were engaged or were about to be engaged in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as such debts became due.

30. Pursuant to Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(b) and 25-6-303, the Receiver may avoid and recover the Transfers paid to Chase.

### THIRD CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-6(1) and 25-6-8 or Utah Code Ann. §§ 25-6-203(1) and 25-6-303)*

31. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

32. The Receivership Entities were engaged in an enterprise with all of the characteristics of a fraud scheme.

33. The Receivership Entities made the Transfers to Chase in furtherance of the fraud scheme.

34. At all relevant times hereto, the Receivership Entities had at least one creditor.

35. The Transfers were paid to Chase without the Receivership Entities receiving a reasonably equivalent value in exchange for the Transfers.

36. The Receivership Entities were insolvent at the time the Transfers were paid or became insolvent as a result of the Transfers or the obligation incurred.

37. Pursuant to Utah Code Ann. §§ 25-6-6(1) and 25-6-8 or Utah Code Ann. §§ 25-6-203(1) and 25-6-303, the Receiver may avoid and recover the Transfers paid to Chase.

### FOURTH CLAIM FOR RELIEF
*(Unjust Enrichment)*

38. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

39. The Transfers were comprised of property of Receivership Entities and were made by Receivership Entities in furtherance of the fraud scheme.

40. The Transfers conferred a benefit upon Chase.

41. Chase knowingly benefitted from the Transfers.

42. Allowing Chase to retain the Transfers would unjustly enrich it and would be inequitable.

43. Absent return of the Transfers, the Receivership Estate will be damaged by Chase's unjust enrichment and may have no adequate remedy at law.

44. Chase must disgorge the amount of the Transfers.

## **PRAYER FOR RELIEF**

WHEREFORE, the Receiver prays for Judgment against Chase as follows:

A. Pursuant to the Receiver's First Claim for Relief, judgment against Chase avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(1) and 25-6-8 or §§ 25-6-202(1)(a) and 25-6-303, and permitting Plaintiff's recovery of the value of the Transfers in the total amount of $446,952.98.

B. Pursuant to the Receiver's Second Claim for Relief, judgment against Chase avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(2) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(b) and 25-6-303, and permitting Plaintiff's recovery of the value of the Transfers in the total amount of $446,952.98.

C. Pursuant to the Receiver's Third Claim for Relief, judgment against Chase avoiding the Transfers under Utah Code Ann. §§ 25-6-6(1) and 25-6-8 or Utah Code Ann. §§ 25-6-203(1) and 25-6-303, and permitting Plaintiff's recovery of the value of the Transfers in the total amount of $446,952.98.

D.      Pursuant to the Receiver's Fourth Claim for Relief, judgment against Chase permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $446,952.98; (2) imposition a constructive trust for the benefit of the receivership estate on any and all Transfers; and (3) disgorgement of the value of the Transfers.

E.      Judgment for pre-judgment interest, costs, and fees, including reasonable attorney's fees, as may be allowed by law.

F.      For such other and further relief as the Court deems just and proper.

DATED this 29th day of October, 2019.

> PARR BROWN GEE & LOVELESS, P.C.
>
> /s/ Jeffery A. Balls
> Jonathan O. Hafen
> Jeffery A. Balls
> Michael S. Lehr
> *Attorneys for R. Wayne Klein, Receiver*